UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Daniela B.,** | No. 1:22-cv-03495-NRM |
| Plaintiff, | **Opinion and Order** |
| v. | |
| **Kilolo Kijakazi,** Acting Commissioner of Social Security, | |
| Defendant. | |

**NINA R. MORRISON**, United States District Judge:

Plaintiff Daniela B. ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for a period of disability and Disability Insurance Benefits ("DIB") and denial of her application for Supplemental Security Income ("SSI").[1] Specifically, Plaintiff challenges the Administrative Law Judge's ("ALJ") conclusion that she retains the Residual Functional Capacity to resume her past relevant work as a "hotel manager," in light of evidence that Plaintiff suffers from (1) numerous physical limitations due to multiple sclerosis, with an approximate onset date of July 2020, along with (2) several mental health impairments that Plaintiff's treating psychiatrist opined would result in "marked" limitations in her

---

[1] Plaintiff's name is initialed to protect her personal information and security. *See* COMM. ON CT. ADMIN. AND CASE MGMT. OF THE JUD. CONF. OF THE U.S., *Privacy Concern Regarding Social Security and Immigration Opinions* (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

daily functioning in work-related settings.

The parties have cross-moved for judgment on the pleadings. ECF No. 11; ECF No. 12. Plaintiff seeks reversal of the Commissioner's decision and remand solely for the calculation of benefits, or in the alternative remand to a different ALJ. For the reasons set forth below, the Court GRANTS Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded to the original ALJ for further proceedings consistent with this Order.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff's claim for benefits rests on what she contends are serious impairments resulting from a combination of both physical and mental health conditions. First, Plaintiff has been diagnosed with multiple sclerosis ("MS") with a listed onset date of July 26, 2020; she argues that this degenerative condition has already resulted in numerous physical limitations supporting a finding that she is disabled under 20 C.F.R. § 416.920. *See* Administrative Record ("A.R.") at 251; ECF No. 11, Plaintiff Motion ("P. Mot."), at 14–15. Second, Plaintiff has undergone mental health treatment for clinically significant symptoms of anxiety and depression for approximately five years, during which time she has been diagnosed with Bipolar II Disorder, Borderline Personality Disorder, and Major Depressive Disorder. A.R. at 387, 626. She argues that these diagnoses and symptoms, taken alone or in combination with impairments from her multiple sclerosis, also support a finding of disability under 20 C.F.R. § 416.920.

On August 28, 2020, Plaintiff filed a Title XVI application for SSI.  *Id.* at 149.
On August 31, 2020, Plaintiff filed a Title II application for a period of disability
and DIB.  *Id.* at 236.  These claims were denied initially on December 23, 2020, and
on reconsideration on April 9, 2021.  *Id.* at 156, 195.  Plaintiff then filed a written
request for a hearing before an ALJ on April 19, 2021.  *Id.* at 207.

On September 2, 2021, ALJ Mark Solomon held a telephone hearing.  *Id.* at
57.  Plaintiff was present at the hearing and was represented by counsel.  *Id.*  By
decision dated September 7, 2021, the ALJ found that Plaintiff was not disabled for
the purposes of disability and DIB under § 216(i) and § 223(d) of the Social Security
Act.  *Id.* at 28.  The ALJ also found that Plaintiff was not disabled for the purposes
of SSI under § 1614(a)(3)(A) of the Social Security Act.  *Id.*

Subsequently, Plaintiff filed an appeal with the Appeals Council on October
4, 2021.  *Id.* at 8.  Plaintiff's counsel submitted additional evidence to the Appeals
Council in the form of a letter from Plaintiff's physician, dated May 25, 2022,
stating Plaintiff was disabled.  *Id.* at 5.  The Appeals Council rejected this
additional evidence as it did not relate to the time period at issue, as the ALJ had
decided Plaintiff's case through September 27, 2021.  *Id.*  On June 6, 2022, the
Appeals Council denied Plaintiff's request for review, and the ALJ's decision became
the final decision of the Commissioner.  *Id.* at 4.

On June 14, 2022, Plaintiff commenced this action.  ECF No. 1.  On October
3, 2022, Plaintiff moved for a judgment on the pleadings, seeking vacatur and
remand of the ALJ's decision.  P. Mot. at 1, 20.  Defendant then cross-moved for

judgment on the pleadings, seeking affirmation of the Commissioner's final decision that Plaintiff was not entitled to DIB or SSI payments. ECF No. 12, Defendant Motion ("D. Mot.") at 1, 28.

### B.   Medical Evidence

The Administrative Record contains opinions, evaluations, and/or medical records from twelve sources. Six of these sources were Plaintiff's treating physicians or clinicians, two were examining consultants, and four were non-examining consultants. The relevant findings are summarized here in chronological order by date of the source's submission(s).

#### 1.   Dr. Wael Kamel

The administrative record contains treatment notes from neurologist Dr. Wael Kamel, dating from September 2019 to September 2020. A.R. at 320, 326. Dr. Kamel noted Plaintiff's initial symptoms such as unsteadiness and dizziness. *Id.* at 312. Dr. Kamel's treatment notes showed Plaintiff's medical testing, such as brain and spine MRIs. *Id.* at 315, 317. In May 2020, Dr. Kamel stated that the results of Plaintiff's cervical spine MRI "revealed possible MS." *Id.* at 317.

#### 2.   Dr. Gene Zitser

Plaintiff received a neurological evaluation and second opinion from Dr. Gene Zitser in June 2020. *Id.* at 376. Dr. Zitser noted that Plaintiff's imaging studies and other medical evidence were "highly suggestive" of a diagnosis of MS and advised Plaintiff to seek help in an MS center. *Id.* at 378.

- 4 -

### 3.    Dr. Igor Stiler

Plaintiff also received treatment from neurologist Dr. Igor Stiler beginning on June 17, 2020.  *Id.* at 381.  Dr. Stiler reviewed Plaintiff's MRI scans and determined that the scans were consistent with a diagnosis of MS.  *Id.*  Dr. Stiler further stated, "the [Plaintiff] is considered TOTALLY DISABLED from any gainful employment as a result of the generalized and diffuse nature of the neurological dysfunction." *Id.* at 383 (emphasis in original).

### 4.    Rose Sultana, LMHC

The administrative record contains a letter written on August 12, 2020, by Rose Sultana, LMHC.  *Id.* at 387.  Sultana stated that she had been treating Plaintiff at Bleuler Psychotherapy Center for approximately three years via weekly psychotherapy sessions.  *Id.*  According to Sultana, Plaintiff was diagnosed with Bipolar II Disorder, Hypomania, and Borderline Personality Disorder.  *Id.*  Plaintiff also suffered from symptoms of "low energy, motivation, and difficulty with focus" as well as "increased anxiety and depression" following her MS diagnosis.  *Id.*  The record does not contain treatment notes from Sultana.

### 5.    Dr. W. Amory Carr

On November 17, 2020, Plaintiff attended a consultative examination with psychologist Dr. W. Amory Carr.  *Id.* at 392.  Dr. Carr noted that Plaintiff's "[a]ttention and concentration were impaired" and that Plaintiff's "[r]ecent and remote memory skills were impaired."  *Id.* at 393.  Plaintiff's cognitive functioning was noted to be "average" with insight and judgment being "[f]air".  *Id.* at 394.  Dr.

Carr opined that Plaintiff would have "[n]o limitation" in her ability to "[u]nderstand, remember, and apply" both simple and complex directions and instructions. *Id.* Dr. Carr further opined that Plaintiff would have "[n]o limitation" in her ability to "[u]se reason and judgment to make work-related decisions" and to "[s]ustain an ordinary routine and regular attendance at work." *Id.*

Dr. Carr determined that Plaintiff had a "[m]ild limitation" in her ability to "[i]nteract adequately with supervisors, coworkers, and the public" and to "[s]ustain concentration and perform a task at a consistent pace." *Id.* Dr. Carr found that Plaintiff had a "[m]oderate limitation" in her ability to "[r]egulate emotions, control behavior, and maintain well being." *Id.* Dr. Carr concluded that the results of Plaintiff's examinations were "consistent with psychiatric problems, but . . . do not appear significant enough to interfere with the [Plaintiff's] ability to function on a daily basis." *Id.*

### 6. Dr. Grace Bynoe

Also on November 17, 2020, Plaintiff attended a consultative examination with Dr. Grace Bynoe. *Id.* at 397. Dr. Bynoe opined that Plaintiff had "marked limitations" for "heavy lifting, carrying, prolonged standing, walking, performing activities that require balance, pushing, pulling, and stair climbing" as well as with "operating heavy machinery" and "operating motor vehicles." *Id.* at 400. Dr. Bynoe found that Plaintiff had "moderate to marked limitations" with "handling objects with the left hand" and "for activities that require foot controls witph [sic] the left foot." *Id.* Dr. Bynoe also stated that Plaintiff "should avoid unprotected heights

and avoid ambulating on rough and uneven terrain." *Id.*

### 7.   C. Walker, Ph.D.

On April 8, 2021, the non-examining State agency consultant on reconsideration, Dr. C. Walker, opined that Plaintiff's medical evidence suggested that Plaintiff's medically determinable psychological impairment was "non-severe as it does not have more than a minimal affect [*sic*] on [Plaintiff's] ability to complete work activities." *Id.* at 119.

### 8.   M. Angelotti, MD

On April 9, 2021, the non-examining State agency consultant on reconsideration, Dr. M. Angelotti, opined that Plaintiff was capable of occasionally lifting and carrying twenty pounds and frequently lifting of carrying ten pounds, could stand or walk for two hours in an eight-hour workday and sit for "[m]ore than 6 hours on a sustained basis" in an eight-hour workday, and had limited abilities to push and pull in her upper and lower left extremities. *Id.* at 121–22.  Dr. Angelotti further opined that Plaintiff could climb ramps and stairs occasionally, could never climb ladders, ropes or scaffolds, could occasionally balance, and had no limitations in stooping, kneeling, crouching, and crawling. *Id.* at 122–23.  Dr. Angelotti stated Plaintiff had no limitations in reaching in any direction, but found limited handling, fingering, and feeling abilities in Plaintiff's left extremities. *Id.* at 123.

### 9.   Dr. Alexander Pinkusovich

Plaintiff's treating psychiatrist, Dr. Alexander Pinkusovich, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" on

August 4, 2021.  *Id.* at 614–16.  At the time of his evaluation, Dr. Pinkusovich had treated Plaintiff for approximately one year.  *See id.* at 629.

Dr. Pinkusovich reported that Plaintiff had "[m]arked" restrictions in her abilities to "[c]arry out simple instructions," "make judgments on simple work-related decisions," "[u]nderstand and remember complex instructions," "[c]arry out complex instructions," and "make judgments on complex work-related decisions." *Id.* at 614.  Plus, Dr. Pinkusovich noted that Plaintiff had "moderate" difficulties in her ability to "[u]nderstand and remember simple instructions."  *Id.*  Plaintiff also appeared to face "[m]arked" restrictions in her ability to "[i]nteract appropriately with the public," "[i]nteract appropriately with supervisor(s)," "[i]nteract appropriately with co-workers," and "[r]espond appropriately to usual work situations and to changes in a routine work setting."  *Id.* at 615.

### C.    The ALJ's Decision

To be eligible for Disability Insurance Benefits ("DIB"), a claimant must be found disabled within the meaning of the Social Security Act.  20 C.F.R. § 416.920; *see also* 20 C.F.R. § 416.905 (defining disability).  In determining whether a claimant is disabled under the Social Security Act, an ALJ must follow a five-step framework.  *Id.* § 416.920(a)(4); *see, e.g.*, *Thomas v. Comm'r of Soc. Sec.*, No. 20-CV-5086 (PKC), 2022 WL 523544, at *2 (E.D.N.Y. Feb. 22, 2022).

At step one, an ALJ considers the claimant's work activity.  If a claimant is "doing substantial gainful activity," an ALJ will find the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(i).

At step two, an ALJ determines whether a claimant suffers from a "severe medically determinable physical or mental impairment." *Id.* § 416.920(a)(4)(ii). An impairment must meet the "duration requirement in § 404.909": Unless the "impairment is expected to result in death," the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 404.909. If a claimant does not have an impairment or impairments that meets the duration requirement, an ALJ will find the claimant not disabled. *Id.* § 416.920(a)(4)(ii). If the duration requirement is met, an ALJ proceeds to step three.

At step three, an ALJ determines whether a claimant's impairment "meets or equals" one of the impairments listed in appendix 1 to subpart P of part 404 of the Social Security Act (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment does, a claimant will be found disabled. *Id.* If a claimant's impairment "does not meet or equal a listed impairment," an ALJ must "assess and make a finding about [the claimant's] residual functional capacity." *Id.* § 416.920(e).

At step four, the residual functional capacity ("RFC") is considered in relation to claimant's "past relevant work." *Id.* § 416.920(a)(4)(iv). If a claimant is able to perform "past relevant work," they will be found not disabled. *Id.* If a claimant is unable to perform past relevant work an ALJ proceeds to step five.

At step five, the RFC is considered along with the claimant's "age, education, and work experience" to determine whether the claimant can "make an adjustment to other work." *Id.* § 416.920(a)(4)(v). If a claimant "cannot make an adjustment to

other work" the claimant will be found disabled.  *Id.*

Here, the ALJ's analysis followed the five-step evaluation framework required by 20 C.F.R. § 416.920.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged multiple sclerosis ("MS") onset date of July 26, 2020.  A.R. at 21.  At step two, the ALJ found Plaintiff's MS qualified as a severe medically determinable impairment that limited Plaintiff's "ability to perform basic work activities."  *Id.*  The ALJ determined that Plaintiff's medically determinable mental impairments are non-severe because they cause only "minimal limitation" in Plaintiff's "ability to do basic work activities.  *Id.* at 24.

At step three, however, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of one of the Listings.  *Id.*  The ALJ considered Listing 11:09 ("Multiple sclerosis") and found that Plaintiff's impairment did not meet that listing because "there is no evidence of any significant deficits in the four broad mental function areas due to MS or any other cause."  *Id.*  Additionally, the ALJ found that although Plaintiff "did experience some persistent MS symptoms affecting the left arm and left leg" these difficulties "did not result in 'extreme' difficulties balancing while standing/walking . . . rising from a seated position . . . or using the upper extremities."  *Id.* at 24–25.

As the ALJ concluded that Plaintiff's impairments did not meet or medically equal the impairments in the Listings, the ALJ then determined a Residual Functional Capacity ("RFC") for Plaintiff.  *Id.* at 25.  The ALJ found that Plaintiff was able to perform "sedentary work as defined in 20 CFR 404.1567(a) and

416.967(a)" with some restrictions. *Id.* at 25. The restrictions included limitations such as "standing/walking no more than 2 hours total in an 8-hour day" and "lifting/carrying of 10 pounds occasionally and less than 10 pounds frequently." *Id.* at 27.

At step four, the ALJ found that Plaintiff is not disabled because, at the time of the hearing, she was able to perform her "past relevant work as a hotel manager." *Id.* at 28. The ALJ stated that work as a hotel manager would not "require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." *Id.* However, the ALJ concluded that Plaintiff would *not* be able "to perform other past relevant work as a front desk clerk . . . and home attendant." *Id.* The ALJ also stated that "[t]his finding is also consistent with the testimony of the vocational expert at [the] hearing." *Id.*

Because the ALJ determined Plaintiff could perform past relevant work, the ALJ did not proceed to step five. *See id.* The ALJ then concluded that Plaintiff was not disabled as defined under the Social Security Act from the alleged onset date of July 26, 2020, through the date of the ALJ's decision on September 27, 2021. *Id.*

## II. STANDARD OF REVIEW

In reviewing a final decision of the Commissioner of Social Security, the court must determine whether the Social Security Administration's conclusions were "supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Schillo v. Kijakazi,* 31 F.4th 64, 74 (2d Cir. 2022) (citation omitted).  In making the determination as to whether the Social Security Administration's findings are supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).  "If there is substantial evidence to support the determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013) (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).

## III.  DISCUSSION

Plaintiff argues that the ALJ did not adequately develop the record by failing to recontact Dr. Bynoe and Dr. Pinkusovich to clarify what the ALJ viewed as inconsistencies in their respective opinions.  P. Mot. at 13–16.  Plaintiff also argues that the ALJ failed to provide an RFC supported by substantial evidence since he relied on assessments from non-examining consultants in determining the RFC, *id.* at 16; improperly assumed the role of a medical expert, *id.* at 17, 19; and failed to mention or otherwise take into account Plaintiff's disc herniation in his opinion.  *Id.* at 14.

For the reasons set forth below, the Court grants Plaintiff's motion and remands for further proceedings because (1) the ALJ failed to adequately develop the record and (2) the ALJ's determination that Plaintiff had an RFC allowing her to perform her past relevant work as a hotel manager was not supported by substantial evidence, specifically with respect to any limitations on Plaintiff's

residual functional capacity caused by her mental health impairments.  In light of these findings, the Court need not and does not reach Plaintiff's remaining arguments.

### A.    Lack of Substantial Evidence

Regarding the impairments that Plaintiff has asserted based on her mental health diagnoses and symptoms, Plaintiff argues the ALJ "assumed the role of a medical expert" by effectively declaring, without a supporting medical opinion, that "the plaintiff's claimed mental impairments do not exist."  P. Mot. at 19.

The administrative record documents Plaintiff's medical impairments with medical opinions from Dr. Pinkusovich (treating source), Ex. 8F, 15F; Dr. Amory Carr, (one-time consultative examiner), Ex. 9F; M. Butler (initial State agency non-examining consultant), Ex. 1A, 4A; and C. Walker (State agency non-examining consultant on reconsideration), Ex. 7A, 8A.  The record also contains a letter from Rose Sultana, Plaintiff's licensed mental health counselor.  Ex. 7F.

The ALJ found Dr. Pinkusovich's opinion that Plaintiff "experience[s] 'marked' difficulties" with a wide range of tasks to be "clearly inconsistent with the medical record and is regarded as unpersuasive."  A.R. at 22–23.

In reviewing the opinion of Dr. Carr—a one-time consulting examiner—the ALJ found Dr. Carr's conclusion that Plaintiff only experienced mild limitations "with respect to most mental work tasks" to be "persuasive and consistent with the evidence as a whole."  *Id.* at 23.  However, the ALJ disagreed with a different portion of Dr. Carr's opinion, which stated Plaintiff suffered from moderate

difficulties with "regulating emotions, controlling behavior and seeing to well-being."  The ALJ found that this portion of Dr. Carr's opinion was "not consistent with the record or persuasive" because "the [Plaintiff] *seems capable* of handling a normal independent routine."  *Id.* (emphasis supplied).

The Court agrees with Plaintiff that the ALJ's assessment of Plaintiff's asserted mental health impairments was flawed.  In reaching his conclusion, the ALJ improperly discounted the diagnosis and assessment of Plaintiff's treating psychiatrist, without seeking clarification from that psychiatrist about what the ALJ believed were "inconsistent" and "unpersuasive" findings by that expert.  In so doing, the ALJ improperly assumed the role of a medical examiner, resulting in a decision not based on substantial evidence.

An ALJ may not "substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  An ALJ impermissibly substitutes her judgment for that of a competent medical opinion by interpreting medical evidence or ascribing meaning to a lack of medical evidence.  *See Santiago v. Comm'r of Soc. Sec.*, No. 19-CV-4001 (KPF) (KNF), 2020 WL 6530884, at *6 (S.D.N.Y. May 5, 2020) (concluding the ALJ assumed the role of a medical expert by determining the lack of pain management and physical therapy in the record indicated the plaintiff's back pain was not severe).  Although "an ALJ is free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or

testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting

*McBrayer v. Sec. of Health & Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)

(alterations omitted)).

The ALJ determined that Plaintiff "seems capable of handling a normal

independent routine." A.R. at 23. However, Dr. Carr's opinion was that Plaintiff

suffered from "[m]oderate limitation[s]" in her ability to "[r]egulate emotions,

control, behavior, and maintain well being." *Id.* at 394. Even more significantly,

the opinion of Dr. Pinkusovich—a psychiatrist who had treated Plaintiff for a full

year prior to submitting his evaluation—was that Plaintiff had "[m]arked"

limitations in her ability to "[i]nteract appropriately with the public," "[i]nteract

appropriately with supervisor(s)," "[i]nteract appropriately with co-workers," and to

"[r]espond appropriately to usual work situations and changes in a routine work

setting." *Id.* at 615.

In determining that Plaintiff is "capable of handling a normal independent

routine" without meaningfully accounting for two experts' opinions to the contrary,

*see id.* at 23, the ALJ impermissibly assumed the role of a medical expert by

substituting his own assessment of Plaintiff's functional capacities against those of

the medical opinions from both Dr. Carr and (in particular) her treating psychiatrist

Dr. Pinkusovich. In so doing, he impermissibly "set his own expertise against that

of a physician who submitted an opinion to or testified before him." *Balsamo*, 142

F.3d at 81 (2d Cir. 1998) (citation and alterations omitted)).

### B.      Failure to Develop the Record

In reviewing a final decision of the Commissioner, a court must also determine whether the ALJ "fully and completely" developed the record. *Ajibose v. Colvin*, No. 15-CV-03346 (PKC), 2016 WL 8711342, at *7 (E.D.N.Y. Sept. 30, 2016) (citation omitted); *see also Echevarria v. Sec'y of Health & Hum. Servs.,* 685 F.2d 751, 755 (2d Cir. 1982) (noting that "the ALJ, unlike a judge in a trial, must himself affirmatively develop the record," and emphasizing that reviewing courts must determine that record was fully developed before evaluating whether "substantial evidence" supported the ALJ's decision).  The ALJ has an affirmative duty to develop the record even when the plaintiff is represented by counsel.  *See Chapman v. Comm'r of Soc. Sec.*, No. 19-CV-1873 (PKC), 2020 WL 5763629, at *3 (E.D.N.Y. Sept. 27, 2020) (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  And even if a plaintiff's counsel represents to an ALJ that the record is complete, an ALJ still has an affirmative duty to develop the record.  *See Weiss v. Comm'r of Soc. Sec.*, No. 19-CV-5916 (MKB), 2021 WL 2010503, at *14 n.8 (E.D.N.Y. Mar. 23, 2021). Further, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (citing *Sanchez v. Saul*, No. 18-CV-12102, 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020)).

Here, the ALJ failed to develop the record in two key respects.  First, the ALJ failed to contact Dr. Pinkusovich or Dr. Bynoe in order to have them clarify or otherwise explain what the ALJ had identified—from his own, non-expert review of

the treatment notes—as "inconsistencies" within their respective treatment notes and opinions. Second, the ALJ neglected to obtain treatment records from Plaintiff's longtime treating mental health counselor, Rose Sultana, before concluding that Plaintiff's mental health diagnoses of Bipolar II Disorder, Borderline Personality Disorder, and symptoms of anxiety and depression did not preclude her from performing her past relevant work as a hotel manager. The bases for the Court's conclusion are explained more fully below.

### 1. The ALJ Failed to Recontact Medical Experts to Clarify Inconsistencies Between Assessments and Treatment Notes

"[W]here there are deficiencies in the record," an ALJ has an "affirmative obligation to develop a claimant's medical history." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). This includes an affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with their examination notes. *See Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041, at *3–4 (E.D.N.Y. Sept. 23, 2022); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (finding that, "even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from" a treating physician). Here, the ALJ had a duty to do so with respect to opinions on Plaintiff's mental and physical health impairments.

**Mental health impairments.** An ALJ's duty to develop the record becomes "particularly important" when a claimant suffers from a mental disability. *Telesco v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 336, 354 (S.D.N.Y. 2021). The Second

Circuit has "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian*, 708 F.3d at 419). "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of [their] longitudinal mental health." *Id.* "A mental health patient may have good days and bad days; she may respond to different stressors that are not always active. Thus, the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be achieved with a single consultative examination." *Telesco,* 577 F. Supp. 3d at 354 (quoting *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015)); *see also Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) (explaining that mental health impairments are "not susceptible to clear records such as x-rays or MRIs" and depend "almost exclusively" on "less discretely measurable factors, like what the patient says in consultations").

Plaintiff argues that the ALJ had a duty to recontact Plaintiff's treating psychiatrist, Dr. Pinkusovich, to clarify and resolve such perceived inconsistencies. P. Mot. at 17. Notably, Dr. Pinkusovich was the only treating physician who provided an opinion about Plaintiff's mental health impairments. The ALJ determined that Dr. Pinkusovich's opinion "is clearly inconsistent with the medical record and is regarded as unpersuasive." A.R. at 23. Yet at no time did the ALJ recontact Dr. Pinkusovich and ask him to address these concerns—*i.e.,* to explain

his concerns as to Plaintiff's "marked" mental health impairments and reconcile or otherwise contextualize those opinions with Plaintiff's treatment records.

This was a significant omission. The ALJ's opinion that Plaintiff is not entitled to disability benefits ultimately rested on his conclusion that Plaintiff had the ability to return to her former work as a hotel manager. Yet her longtime psychiatrist opined that Plaintiff suffers from numerous, clinically significant mental health impairments that, Plaintiff argues, would preclude her from doing such demanding interpersonal and managerial work. The record before the ALJ reflects that Plaintiff has been diagnosed with Major Depressive Disorder, Borderline Personality Disorder, and Bipolar II Disorder. *Id.* at 387, 626. And Dr. Pinkusovich identified numerous ways that these conditions would substantially limit her basic functioning in the workplace, particularly with mentally demanding tasks and interpersonal dynamics. For example, he opined that Plaintiff had "[m]arked" restrictions to her ability to "[c]arry out simple instructions," "make judgments on simple work-related decisions," "[u]nderstand and remember complex instructions," "[c]arry out complex instructions," and "make judgments on complex work-related decisions." *Id.* at 614. Dr. Pinkusovich also opined that Plaintiff had "[m]arked" restrictions in her ability to "[i]nteract appropriately with the public," "[i]nteract appropriately with supervisor(s)," "[i]nteract appropriately with co-workers," and "[r]espond appropriately to usual work situations and changes in a routine work setting." *Id.* at 615.

It is not difficult to see why such limitations could make it extremely difficult,

if not impossible, for Plaintiff to perform the demanding task of managing a hotel, which would necessarily include supervising numerous other staff and handling queries and complaints from hotel guests under rapidly evolving and potentially stressful circumstances.[2]  Yet at no time did the ALJ contact Dr. Pinkusovich—who had treated Plaintiff in a clinical setting for approximately one year—to explain the bases for his opinions.  He did not, for example, ask Dr. Pinkusovich to explain why he had identified so many substantial limitations and barriers that might impact Plaintiff's ability to perform the demanding duties of a hotel manager, and how those limitations would or would not impair Plaintiff's ability to supervise other hotel employees, manage the hotel's daily operations, and interact with members of the public on a daily basis.  Instead, the ALJ discounted Dr. Pinkusovich's written assessment as "unpersuasive," and concluded, based on his own (lay) review of her medical records, that the Plaintiff in fact "seems capable of handling a normal independent routine."  *Id.* At 23.

By failing to reconcile what he viewed as marked inconsistencies between Dr. Pinkusovich's opinions and his medical records, the ALJ failed to develop obvious

---

[2] As noted earlier, despite finding that Plaintiff had the RFC to return to her past relevant work as a hotel manager, the ALJ also found that she was "unable" to return to past relevant work as a hotel front desk clerk—a more junior position, and one with some obvious potential overlap in duties in the daily operations of a hotel. *See* A.R. at 77, 79 (describing duties of hotel front desk manager and hotel manager).  While the ALJ was not obligated to set forth these distinctions in detail, these contrary findings add to this Court's concern about whether the ALJ's denial of benefits based on his finding regarding the hotel manager position was supported by substantial evidence.

"gaps" in the record, which requires a remand.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

**Physical impairments.**  Plaintiff also appears to argue that the ALJ had a duty to recontact consulting physical examiner Dr. Bynoe to clarify ambiguities in her opinion as to the physical limitations that Plaintiff's diagnosis of multiple sclerosis placed upon her, as Dr. Bynoe was the only medical source who personally examined Plaintiff and provided an opinion.  P. Mot. at 16.  Including Dr. Bynoe's opinion, the record contains only three assessments relating to Plaintiff's physical impairments.  The other two opinions are from non-examining consultants who based their assessments on her medical records.

An ALJ has a duty to resolve potential inconsistencies in an opinion from a medical expert who actually examined the Plaintiff.  *See Beckman*, 2022 WL 4451041, at *4 (finding that the ALJ had a duty to develop the record and "reconcile" gaps after the ALJ found inconsistencies in the examining physicians' opinions).  As Dr. Bynoe was the only examining source who provided an opinion regarding Plaintiff's physical impairments, it is especially important that the ALJ recontact Dr. Bynoe to resolve any perceived inconsistencies.  Such clarification from Dr. Bynoe was required for the ALJ to fully evaluate any perceived inconsistencies and determine whether Plaintiff's physical impairments, in combination with her mental impairments, would actually allow Plaintiff to perform all of the duties required in her previous position as a hotel manager.

The ALJ's failure to recontact Dr. Bynoe was thus another instance in which

he did not adequately develop the record and provides additional grounds for remand. *See Parker,* 626 F.2d at 235.

## 2. The ALJ Failed to Obtain Necessary Treatment Notes

A lack of treatment notes from a claimant's psychiatrist or therapist may constitute a clear and obvious gap in the record and provide grounds for remand. *See Rizzo v. Berryhill*, No. 16 Civ. 4898 (CS) (PED), 2017 WL 3578701, at *16 (S.D.N.Y. Aug. 17, 2017) (concluding missing treatment records from the claimant's licensed clinical social workers was an obvious gap in the record). An ALJ must make "'every reasonable effort' to develop a claimant's 'complete medical history.'" *See Rodriguez v. Comm'r of Soc. Sec.,* No. 19-CV-6855 (VSB) (JLC), 2020 WL 3968267, at *18 (S.D.N.Y. July 14, 2020) (quoting 20 C.F.R. § 404.1512(b)(1)). "'Every reasonable effort' requires that the ALJ make an initial request for evidence from the medical source and make one follow up request between 10 and 20 calendar days after the initial request." *Id.* (quoting 20 C.F.R. §§ 404.1512(b)(1), 404.1512(b)(1)(i)).

Although Plaintiff does not argue that the ALJ failed to develop the record by failing to request or obtain treatment notes from Rose Sultana, this Court must independently consider whether the ALJ sufficiently developed the record. *See Prieto,* 2021 WL 3475625, at *10 ("[T]he Court must independently consider whether the ALJ failed to satisfy his duty to develop the record."). Here, the record does not include any treatment notes from the mental health counselor who treated Plaintiff regularly for three years (but who instead provided only a letter

summarizing her treatment of Plaintiff), which is a clear and obvious gap in the record. *See Rizzo,* 2017 WL 3578701, at *16. That is particularly so where, as here, there were two experts who treated Plaintiff for her mental impairments over a significant period of time, and whose reports noted that she received more than one clinically significant diagnosis of a serious mental health impairment (Bipolar II Disorder, Borderline Personality Disorder, and Major Depressive Disorder), but the ALJ disagreed with these experts' opinions and found that the Plaintiff had the RFC to work in the demanding position of "hotel manager."

In reaching his conclusion, the ALJ noted his review of a two-paragraph letter received from Rose Sultana, LMHC; the letter stated Plaintiff was diagnosed with Bipolar II Disorder and Borderline Personality Disorder, had been treated through Bleuler Psychotherapy Center for three years, and received weekly psychotherapy sessions. A.R. at 22, 387. However, there are no treatment records provided by either Rose Sultana or Bleuler Psychotherapy in the record. In the hearing transcript, the ALJ makes no mention of the lack of records from Sultana. *See generally* A.R. 55–85. The ALJ's opinion states—without explanation—that "Ms. Sultana's records are not included in the record." *Id.* at 22. It appears that the ALJ did not request records from Sultana, and thus did not adequately develop the record by failing to request or obtain treatment records from Sultana or Bleuler Psychotherapy. *See Rodriguez,* 2020 WL 3968267, at *18 ("Having failed to obtain any additional mental health treatment notes that would illustrate the scope of [Plaintiff's] conditions . . . the ALJ thus relied on an incomplete medical record.

Such reliance is an error warranting remand.").[3]

## IV. PLAINTIFF'S REQUEST TO REMAND FOR CALCULATION OF BENEFITS

Plaintiff argues that the case should be remanded solely for calculation of benefits.  P. Mot. at 20.  A reviewing court will only remand for calculation of benefits when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa*, 168 F.3d at 83.  While on the present record, the Court agrees that Plaintiff has made a strong argument that her physical impairments from Multiple Sclerosis, combined with the numerous mental health impairments reported by her treating psychiatrist and longtime clinical social worker, make it highly unlikely that she has the residual functional capacity to perform the duties of a hotel manager, there remain numerous gaps in the administrative record; as such, it would be improper to remand solely for the calculation of benefits at this time.

In the alternative, Plaintiff argues that the case should remanded for further proceedings before a different ALJ.  P. Mot. at 20.  While a reviewing court may

---

[3] The administrative record contains two references to a request for Bleuler Psychotherapy's records.  The first request can be found in the disability determination explanation on the initial level, which lists that evidence was requested from Bleuler Psychotherapy on September 24, 2020, and October 8, 2020. A.R. at 90.  The second request can be found in the disability determination explanation on the reconsideration level which presumably lists the same requests from the same dates.  A.R. at 117.  These requests appear to have been made by the consultative examiners completing the disability determinations, and not the ALJ. It is unclear whether these requests were made directly to Bleuler Psychotherapy, or internally within the Social Security Administration.

remand a case to a new ALJ, this is generally limited to situations where "the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004); *see Ocasio v. Astrue*, No. 08 Civ. 2016 (JFC), 2009 WL 2905448, at *5–6 (S.D.N.Y. Sept. 4, 2009) (granting claimant's request for a new ALJ where the ALJ displayed signs of animosity and insensitivity towards the claimant and her impairments).

The Court agrees with Defendant that it does not appear here that the ALJ exhibited animosity or insensitivity towards the Plaintiff; nor does the Plaintiff point to any specific instances that raise concerns about the ALJ's ability to fairly adjudicate this case on remand. *See* D. Mot. at 29. Remand to a new ALJ is not necessary. Instead, this case will be remanded for further proceedings consistent with this order. *See, e.g., Baldwin v. Astrue,* No. 07 Civ. 6958 (RJH) (MHD), 2009 WL 4931363, at *28 (S.D.N.Y. Dec. 21, 2009).

## V.   CONCLUSION

For the reasons outlined herein, the court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this opinion.

SO ORDERED.

_/s/ NRM_
NINA R. MORRISON
United States District Judge

Dated:   May 30, 2023
         Brooklyn, New York